**SOCIETY OF SEPARATIONISTS, INC., a Maryland nonprofit corporation, Chris Allen, and Richard Andrews, Plaintiffs and Appellants,**

v.

**Jay B. TAGGART, Utah State Superintendent of Public Instruction, Defendant and Appellee.**

No. 910387.

Supreme Court of Utah.

Oct. 12, 1993.

Brian M. Barnard, John Pace, Salt Lake City, for plaintiffs and appellants.

R. Paul Van Dam, Atty. Gen. and John S. McAllister, Asst. Atty. Gen., Salt Lake City, for defendant and appellee.

ZIMMERMAN, Justice:

Plaintiffs Chris Allen, Richard Andrews, and the Society of Separationists (collectively, "Separationists") appeal from a district court order dismissing with prejudice their complaint against defendant Jay Taggart, the former Superintendent of Public Instruction for the State of Utah. The Separationists are seeking a declaratory judgment that Taggart violated article I, section 4 of the Utah Constitution when he disbursed state funds to a Rhode Island school district to assist it in pursuing United States Supreme Court review of a case the school district had lost. We affirm.

 In reviewing the trial court's decision, we accept the Separationists' factual allegations as true and draw all reasonable inferences from those facts in a light most favorable to their position. *Prows v. State,* 822 P.2d 764, 766 (Utah 1991); *see Colman v. Utah State Land Bd.,* 795 P.2d 622, 624–25 (Utah 1990). Rule 12 of the Utah Rules of Civil Procedure requires this favorable view of the facts because a trial court may dismiss an action under rule 12(b) only if it clearly appears that the plaintiffs are not "entitled to relief under the facts alleged or under any state of facts they could prove to support their claim." *Prows,* 822 P.2d at 766 (citing *Colman,* 795 P.2d at 624). We recite the facts accordingly.

The central issue here—the propriety of prayer in the public schools—has been the subject of extensive debate throughout the United States and Utah for decades. It is against that background that this case arose. In 1990, a federal district court in Rhode Island held that public prayer at a junior high school graduation ceremony violated the Establishment Clause of the First Amendment to the United States Constitution. *Weisman v. Lee,* 728 F.Supp. 68 (D.R.I.1990). The United States Court of Appeals for the First Circuit affirmed that

decision, 908 F.2d 1090 (1990), and the Providence, Rhode Island, school district that was involved in the suit desired United States Supreme Court review. The costs of preparing a petition for certiorari, however, appeared to preclude the appeal.

Nevertheless, in January of 1991, defendant Taggart, acting in his official capacity as the Superintendent of Utah's public schools, contributed $10,000 from state funds to the Providence School Committee to assist in preparation of the petition for review. This expenditure was made after a discussion of the issue with various state officials, including the Attorney General, the Governor, and several legislators. Taggart also requested that the Attorney General's office file an amicus brief in support of the petition for certiorari.

As Taggart hoped, the Supreme Court agreed to hear the case. After certiorari was granted but before argument on the merits, the Separationists brought this action. They sought an injunction to prevent any Utah official from filing an amicus brief in the United States Supreme Court in support of the Rhode Island school district and to prevent Utah from expending any additional public funds on the Rhode Island case. In addition, the Separationists requested a declaratory judgment that Taggart had made the $10,000 contribution to the Providence School Committee in violation of article I, section 4 of the Utah Constitution.

Taggart was served on May 30, 1991, and moved to dismiss with prejudice the Separationists' complaint on June 19, 1991. Taggart asserted four alternative defenses: (i) The complaint fails to state a claim upon which relief can be granted; (ii) plaintiffs lack standing; (iii) the issue is moot; and (iv) the expenditure involved did not violate the Utah Constitution. On July 17, 1991, the trial court granted Taggart's motion to dismiss. The court did not specify the grounds for dismissal but stated only that Taggart's motion was "well taken" and dismissal was "granted for the reasons suggested by the defendant." The Separationists appeal that ruling.

Having stated the facts in a light most favorable to the Separationists, we review the trial court's decision to grant the motion to dismiss for correctness. This standard of review is applied because whether the Separationists are entitled to relief on those facts is a question of law. *See Golding v. Ashley Cent. Irr. Co.*, 793 P.2d 897, 898 (Utah 1990). Although the trial court based its decision to dismiss on the four alternative grounds advanced by Taggart, we will affirm if any one of those grounds is legally sufficient.

■ We first address the Separationists' claim that Taggart's disbursement of state funds to support preparation of the Rhode Island school district's certiorari petition violated article I, section 4 of the Utah Constitution. That provision reads as follows:

The rights of conscience shall never be infringed. The State shall make no law respecting an establishment of religion or prohibiting the free exercise thereof; no religious test shall be required as a qualification for any office of public trust or for any vote at any election; nor shall any person be incompetent as a witness or juror on account of religious belief or the absence thereof. There shall be no union of Church and State, nor shall any church dominate the State or interfere with its functions. *No public money or property shall be appropriated for or applied to any religious worship, exercise or instruction, or for the support of any ecclesiastical establishment.* No property qualification shall be required of any person to vote, or hold office, except as provided in this Constitution.

Utah Const. art. I, § 4 (emphasis added). The Separationists assert that the $10,000 donation of state funds constituted an appropriation of public funds for the "religious exercise" of prayer and, alternatively, an appropriation for an "ecclesiastical establishment." They do not contend, however, that litigation itself is a "religious exercise" or that the school board or its lawyers are an "ecclesiastical establishment." Rather, they argue that because the position advanced by the Providence School Committee was favorable to prayer in the public schools, support of that position in litigation amounts to the use of public funds to support prayer, a "religious exercise."

Article I, section 4 proscribes only the use of public money or property for "religious worship, exercise or instruction, or for the support of any ecclesiastical establishment." Even assuming that the expenditure of public money to support prayer in the public schools would violate this provision, nothing Taggart did could be so described. At most, he spent state funds to advocate that under the United States Constitution, prayer at public school graduation ceremonies should not be held to violate the First Amendment. Under no plausible reading of the Utah Constitution could Taggart have been found to have violated the terms of article I, section 4. He certainly has not given public funds to an "ecclesiastical establishment," and none of the money went for "religious worship, exercise or instruction." To advocate the legality of a practice is not to fund that practice. The Separationists' position makes no logical sense and lacks any legal merit.

■ It is worth noting that the Separationists' position also flies in the face of a fundamental premise of the American system of government at both state and federal levels. Under the three-part separation of powers regime, if a legislature passes a law that is later attacked on constitutional grounds, it is the duty of the executive branch to defend that law. *See* Utah Const. art. VII, § 16; Utah Code Ann. § 67–5–1. If the courts later determine the law to be unconstitutional, the state cannot be said to have violated the constitutional provision under consideration merely because it defended the law during the litigation process. Under our system of government, the courts alone make the ultimate determination of the constitutionality *vel non* of an act or practice. It would be contrary to this entire scheme to hold, as the Separationists argue, that the state may not participate in litigation to deter-

mine the constitutionality of a practice because it might lose or, as is really argued here, because someone hopes it might lose.

The Separationists have pleaded no facts indicating that the state has acted inappropriately in this matter. Therefore, the trial court was correct in dismissing the complaint for failure to state a claim upon which relief could be granted. Accordingly, we have no occasion to address the other alternative grounds for the trial court's ruling. Affirmed.

HALL, C.J., HOWE, Associate C.J., and STEWART and DURHAM, JJ., concur.